(38 Misc. Rep. 46.)

## McWHIRTER v. BOWEN et al.

(Supreme Court, Special Term, New York County.    May, 1902.)

RESULTING TRUST—EVIDENCE.

    Creditors of an insolvent entered into a written agreement that the proceeds of their claims, securities, and all proceeds of property bought in under foreclosure or otherwise should be shared pro rata among them as the same should be collected, and that in any foreclosure or under any lien the property should be bought in for the benefit of all. One of them, after assuming management of the property of the debtor for the general benefits, bought in under foreclosure, in the name of a nonresident, certain property, apparently furnishing the purchase money himself.    *Held*, that at suit of another signer, who had stated his willingness to contribute to the purchase money, and had changed his position in reliance upon the agreement, he would be declared the real purchaser, and to hold the property as trustee for the plaintiff and for the other creditors who signed the agreement.

Action by William H. McWhirter against Abner T. Bowen and others.    Judgment for plaintiff.

Shaw, Fisk & Shaw, for plaintiff.
Niles & Johnson, for defendants.

GREENBAUM, J.    The plaintiff and the defendants Abner T. Bowen, Mary E. Busey, and Alwin Eisert became creditors, in varying amounts, of one Frank E. Gilbert, by reason of and in connection with certain building operations in which he was engaged.    Among the buildings erected by Gilbert were four large apartment houses, located at the northwest corner of Madison avenue and Eighty-Eighth street, of estimated valuation of about $245,000.    On October 18, 1898, these premises were incumbered with four mortgages upon permanent loans aggregating $165,000.    There was also a fifth mortgage of $15,000, which was subsequently acquired by a Mr. Sondheim, and known in the discussion between the parties as the "Sondheim Mortgage." Gilbert became financially embarrassed, and it is substantially conceded, as between the parties to this action, that while in this condition, and practically insolvent, he fraudulently executed two mortgages upon these premises (one for $18,000, recorded October 19th, and another for $65,000, recorded October 20th) in favor of his mother-in-law, a Mrs. Hopkins.    As soon as the defendant Eisert learned of the record of the $18,000 mortgage he recorded a mortgage for $3,500 which he then held as security for his claim; and the plaintiff on the 20th of October, but an hour after the record of the $65,000 mortgage, filed a mechanic's lien against the property for $8,406. Actions were commenced by Eisert to foreclose his mortgage, and by the plaintiff to foreclose his mechanic's lien, and in the complaints in these actions allegations were made as to the fraudulent character

of the Hopkins mortgages. Mrs. Mary E. Busey also brought actions through Mr. Bowen, acting as her attorney in fact, for the enforcement of her claims, in which the Hopkins mortgages were also assailed as fraudulent. Shortly after the situations above set forth had been created, the defendants Bowen and Eisert, each represented by counsel, and the plaintiff, represented by his counsel, met together for the purpose of taking concerted action to protect their respective claims. Numerous conferences were held and methods discussed for securing control of the Madison avenue property, and attacking the alleged fraudulent Hopkins mortgages. As a consequence of these deliberations, the aforementioned parties, together with the defendants Mary E. Busey, of Urbana, Ill., and one William H. Busey, of Champaign, Ill., also creditors of Gilbert, entered into an agreement on December 3, 1898, looking to concerted action to be taken for the enforcement of their respective claims against Gilbert. Upon the meaning of, and effect to be given to, this agreement, must the rights of the parties here finally rest. The agreement recites the various interests of the parties, and shows that their respective claims against Gilbert were substantially as follows: Eisert, $21,150; McWhirter, $9,656; Mary E. Busey, $27,000; Abner T. Bowen, $26,500; and William H. Busey, $895.84. It appears also from the recitals, and the fact is, that upon these claims the defendant Eisert held the obligations of Mrs. Hopkins as to a portion of his claim, and the defendants Bowen and Mary E. Busey and William H. Busey also held the obligations of Mrs. Hopkins upon all their claims against Gilbert. The agreement then provides that each party shall furnish to the others his assistance, and such evidence as may be proper and material; that each party shall pay his own counsel fees; "that all the proceeds of their respective claims, obligations, and securities, and all income and proceeds of property bought in under any foreclosure or other sale, shall be shared pro rata among the parties hereto in proportion to the respective amounts of their several claims as above stated, as the same shall be collected or received," excepting, however, the participation of the plaintiff, McWhirter, in any realization under the obligations held against Mrs. Hopkins, as to which the others to the agreement were alone to be benefited pro rata. The agreement then provides that advances be made by the parties, to be prorated, to the extent of $2,500, in order to protect the property from foreclosure. It is further provided that, in case the property is foreclosed under a foreclosure of the mortgage or lien of any of the parties, the property shall be bought in for the benefit of all. The remainder of the agreement provides as to the method to be adopted in case of ownership, in the disposition of the property, and the respective rights of the parties in controlling and managing it. Subsequently, and on the 8th day of February, 1899, the same parties entered into a further agreement, from which it appears that a settlement had been effected with respect to the $18,000 Hopkins mortgage, whereby the parties who held obligations against Mrs. Hopkins had secured an assignment of this mortgage. The object of the agreement was to validate. as between these parties, this mortgage of $18,000 which had been assailed as fraudulent by them, and to declare

the interests of the parties therein. The plaintiff, McWhirter, by this agreement released any claim that he might make against the validity of the mortgage, and consented to the distribution of any proceeds to be derived therefrom among the other parties, to his exclusion. The plaintiff, upon the assignment of the $18,000 mortgage, discharged his mechanic's lien, and discontinued his action to set aside the fraudulent mortgage. It appears that upon the execution of the agreement of February 8th the defendant Bowen took entire possession of the premises, effected rentals, and collected rents. Mr. Bowen contends that his possession was as mortgagee in possession under the assigned $18,000 Hopkins mortgage. In view of his own statements that the plaintiff had not taken much active interest in managing the property, and of the further statement in which he refers to what he regards the unjust criticism of the plaintiff in his management of the property, and of other circumstances, I am inclined to find that Mr. Bowen went into possession for the benefit of all the parties to the agreement. This was the situation of affairs when the matter of the foreclosure of the Sondheim mortgage, which was payable in monthly installments of $1,000 each, became serious. It was to provide against the contingency of a foreclosure of this mortgage that the provision for raising $2,500 was interested in the agreement of December 3d. It was estimated that with this sum the installments due on the Sondheim mortgage could be met, and that, from the returns of the property, future installments and the running charges of the property could be paid. The plaintiff was called upon by Mr. Bowen to pay his proportionate share of the $2,500, to wit, the sum of $276.25, and it is conceded that a check for the amount was given by plaintiff to Bowen. Eisert's share was $666.25. Instead of paying this amount, Bowen accepted an assignment of the $3,500 mortgage held by Eisert as security for his proportionate payment. Mr. Bowen thus assumed to act for all the parties, and continued in possession of the property. For some reason only $1,000 was paid over to Mr. Sondheim, who claims to have received this sum not in payment of an installment, but as security for his mortgage, and the foreclosure of this mortgage was proceeded with, and a sale of the premises had thereunder on May 4, 1899. The premises were bid in at this foreclosure sale in the name of the defendant Samuel T. Busey for the sum of $30,000, subject to the first four mortgages of $165,000. It is now contended by the plaintiff that, although the property was purchased ostensibly by Samuel T. Busey, as matter of fact it was bought by the defendant Bowen for himself and Mrs. Busey, for whom he acted; and he asks that the court, in effect, decree that the sale under the Sondheim mortgage foreclosure was actually made to the defendant Bowen, and that he holds the property in trust for the plaintiff and the other parties to the agreement of December 3, 1898.

The evidence as to the relations of the defendant Bowen to the Buseys and as to the circumstances under which the property was purchased at this foreclosure will be now considered. It appears that the defendant Mary E. Busey is the sister of the defendant Bowen, and the sister-in-law of William H. Busey, and that the aggregate claims of the defendant Bowen and of the Buseys, whom he repre-

sented throughout all these transactions, was about $55,000. The defendant Bowen did a banking business under the firm name of A. T. Bowen & Co., and the defendant Samuel T. Busey, the purchaser at the foreclosure sale, is the husband of the defendant Mary E. Busey, and therefore a brother-in-law of the defendant Bowen. Samuel T. Busey lived, and still lives, in Urbana, Ill. He did not personally attend the sale, but was there represented by one George W. Busey, a relative. The 10 per cent. deposit required at the time of the sale was paid by the defendant Bowen, who cashed the draft drawn by George W. Busey, cashier of Busey's bank, on Samuel T. Busey. It was claimed that Busey's bank had money on deposit with Bowen in New York. Bowen paid the balance of the purchase money, and charged it to Samuel T. Busey. It does not clearly appear that Samuel T. Busey, as matter of fact, paid any money down on this transaction. The deed to Samuel T. Busey was recorded at the request of Bowen. Bowen continued in charge of the property, acting in all respects in the possession of the property as he had done before the sale. Subsequently Bowen secured a permanent loan on the premises from the Dime Savings Bank of Brooklyn, and immediately prior to the loan Samuel T. Busey transferred the title to the premises to a Miss Quinn, an employé in Bowen's office. Miss Quinn, apparently as a "dummy," executed the mortgage to the Dime Savings Bank, and then reconveyed the premises to Samuel T. Busey. All these details were arranged by Bowen. It might also be stated that at the foreclosure sale the attorney for Mr. Bowen acted for George W. Busey, agent of Samuel T. Busey, although the attorney admits that he had not theretofore known the Buseys. Mr. Bowen testified that the referee's deed was delivered to his own attorney "and me, I believe, for Mr. Busey." It also appears that on the day previous to the foreclosure sale the plaintiff called at the office of Mr. Bowen's attorney, there met Mr. Bowen and his attorney, and was questioned as to his willingness and ability to "put up" money on the sale. Plaintiff stated that he could "put up" $3,000 in cash, and more later, if necessary. This sum would have been about the amount required as his proportionate share of the contribution in case the property was bid in for $30,000, the sum for which it was knocked down. The plaintiff attended the sale, and did not bid; believing, as he testified, that the property was being purchased by Bowen for the benefit of the parties mentioned in the agreement of December 3d.

It will now be in order to consider the rights of the parties under the agreement of December 3d. It was therein provided that "all the proceeds of their respective claims, obligations, and securities, and all income and proceeds of the property bought in under any foreclosure or other sale, shall be shared pro rata among the parties," etc. It is evident that, while there was no obligation on the part of any of the parties to the agreement to actually purchase the property for the benefit of all concerned, nevertheless, in the event of the purchase by one of the parties, the others would be entitled to the pro rata share therein; assuming, of course, that they were willing to contribute their pro rata share necessary to consummate the purchase. Under the circumstances of the case as developed upon the trial, I am of opinion

that the defendant had taken upon himself the active management and control of the property for the benefit of all the parties to the agreement, and that, in view of the situation of affairs at the time of the sale, the plaintiff had a right to assume that the defendant Bowen was, as matter of fact, purchasing the property for the benefit of the parties to the agreement. While it would have been doubtful if the plaintiff could, under the terms of the agreement, have enforced any claim against Mr. Bowen, had the property been sold to a stranger, we are not called upon here to determine this question. The real inquiry is, did Bowen actually purchase this property, or was the sale to Samuel T. Busey a bona fide one to the latter person? From all the evidence in the case, I cannot believe that Samuel T. Busey was the real purchaser. I am of the opinion that the defendant Bowen was in fact the actual purchaser, and that Samuel T. Busey, his brother-in-law, and the husband of Mary E. Busey, one of the parties to the agreement, was simply used to deprive the plaintiff of his rights under the agreement. The facts above detailed as to the manner in which the purchase was made; the further fact that it is not probable that a person living in Illinois, who never had seen the property, and did not know its value, should have sent a representative to bid at the sale; the relationship of the parties; the fact that Bowen was in correspondence with Samuel T. Busey in relation to the property, and withheld knowledge thereof from plaintiff; the fact that the defendant Bowen gives as his reason for not bidding at the foreclosure that he did not have the ready money, and yet that he seems to have practically advanced the money necessary to complete the purchase; the fact that his and his sister's interests in the property were very large,—all the circumstances and other facts in the case lead me to the conviction that the defendant Bowen was and is the actual owner of the property. Having arrived at this conclusion, it is obvious that the rights of the parties under the agreement must be considered, treating the defendant Bowen as the purchaser in fact. The acts of a party standing in the position of the defendant Bowen should be searchingly scrutinized. One who has assumed to act as trustee for others should not, in conscience, derive a benefit from his acts as trustee at the expense of the rights of those for whom he has chosen to act. The highest good faith is required of such a one. It is peculiarly the province of a court of equity to probe into the doings of those who hold trust relations toward others, and to ascertain if fair dealing has characterized them. Moreover, the essence of the agreement between the parties was that they shall act together for their mutual benefit. The plaintiff, acting under this agreement, gave up important rights and made contribution when required. He was lulled into the belief that it was not necessary for him to bid at the sale, and he stood ready to pay his proportionate share upon the purchase. He was entitled, as a matter of right, under the agreement, to derive whatever of benefit came from the property to the defendant Bowen. None of the parties to the agreement was permitted to secure an advantage over the others. I am therefore of the opinion that the plaintiff is entitled to the relief prayed for, and I decree accordingly.

Judgment for plaintiff.